**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| CINQUE A. BRANDON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:21-CV-278 SRW |
| | ) | |
| NATHAN SPIESS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on review of plaintiff Cinque Brandon's amended complaint pursuant to 28 U.S.C. § 1915. After reviewing the amended complaint, the Court will dismiss this action for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B). Furthermore, to the extent plaintiff has alleged any state law claims, those claims will be dismissed, without prejudice, pursuant to 28 U.S.C. § 1367(c).

### Standard of Review

This Court is required to dismiss a complaint filed *in forma pauperis* if it is frivolous, malicious, or fails to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2). An action is frivolous if it "lacks an arguable basis in either law or fact." *Neitzke v. Williams*, 490 U.S. 319, 328 (1989). An action fails to state a claim upon which relief may be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

A claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Determining whether a complaint states a plausible claim for

relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The court must assume the veracity of well-pleaded facts but need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678 (citing *Twombly,* 550 U.S. at 555).

This Court must liberally construe complaints filed by laypeople. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). This means that "if the essence of an allegation is discernible," the court should "construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). However, even *pro se* complaints must allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). Federal courts are not required to assume facts that are not alleged, *Stone*, 364 F.3d at 914-15, nor are they required to interpret procedural rules so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States,* 508 U.S. 106, 113 (1993).

**The Amended Complaint**

Plaintiff Cinque Brandon, an inmate at Clark County Jail in Jeffersonville, Indiana, brings this action pursuant to 42 US.C. § 1983. Plaintiff filed the instant action on or about March 3, 2021 against the St. Louis City Police Officers. On November 12, 2021, the Court ordered plaintiff to amend his complaint on a court-provided form within twenty-one (21) days. Plaintiff filed his amended complaint on December 3, 2021.

In his amended complaint, plaintiff names the following individuals as defendants in this action: Nathan Spiess (St. Louis City Police Officer); Joshua Loos (St. Louis City Police Officer); Bradley Nelson (St. Louis City Police Officer); and the City of St. Louis. Plaintiff brings this action against defendants in their official capacities only.

Plaintiff claims that on October 14, 2020, the St. Louis Police Department responded to a call at the 1500 block of Church Street and was met by Ashley M. Plaintiff states that Ashley M. told police officer Jessica Walsh that plaintiff had threatened her when seeking the return of his "runaway teen daughter." Plaintiff purports that Officer Walsh told Ashley M. to go through proper channels and file a restraining order against plaintiff; however, Ashley M. allegedly told police that she had a nephew that would "handle" the matter. According to plaintiff, Ashley M. was the owner of a red malibu sedan parked in front of her home.

Plaintiff states that Police Officers Nathan Spiess and Joshua Loos responded to "shots fired" at 8743 Annette Street around a half an hour after Officer Walsh had spoken to Ashley M. He claims that the officers were met by 911 caller, plaintiff's wife, Sparkle Kennell. Plaintiff claims that Sparkle Kennell, as well as plaintiff's daughter, Quianna Kennell, told police that three black males and a black female had opened fire on Cinque Brandon from a red sedan. Sparkle and Quianna allegedly directed police officers to a red-light camera located at the corner of Annetta and Veronica, which they hoped would provide a video of the suspects. However, Officer Loos allegedly told Sparkle that the camera did not work.

Plaintiff asserts that despite telling Sparkle that the red-light camera did not work, video evidence was later admitted showing Ashley M., as well as her red sedan, 20 minutes prior to the incident at his home. Plaintiff complains that none of the individuals on the video were apprehended, despite evidence given by eyewitness testimony.

Plaintiff claims he was subjected to false arrest and false imprisonment by defendants, as well as "defamation." He seeks monetary damages in this action.

**Plaintiff's Current Criminal Charges**

Plaintiff Cinque Brandon plead guilty in this District on January 22, 2016, to possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i). *United States v. Brandon*, 4:15CR255 CDP (E.D.Mo).[1] He was sentenced on March 16, 2017, to thirty-six (36) months' imprisonment, as well as three (3) years of supervised release. Plaintiff's supervision commenced on December 20, 2017. *See United States v. Brandon*, 4:15CR255 HEA (E.D.Mo.) [ECF No. 89].

On May 7, 2018, the Court modified plaintiff's conditions of supervised release to include mental health treatment as well as participation in the Gang Re-entry Initiative Program (GRIP). This was done in response to plaintiff's Adderall use, missed drug treatment sessions, and missed substance abuse testing dates. On December 13, 2018, the Court was notified of plaintiff's opiate use. No Court action was taken, instead plaintiff was ordered by the Court to serve a weekend in jail, in line with Project GRIP policy. *See United States v. Brandon*, 4:15CR255 HEA (E.D.Mo.) [ECF Nos. 91-94].

According to plaintiff's supervised release officer, on October 14, 2020, St. Louis City Police Officers received a call for "Shots Fired into a Dwelling" at 8743 Annetta. Upon arrival, officers met with Witness #1, who advised that around 10:05AM, she observed three armed males approach the residence and yell, "Where that dude at?" Witness #1 asked who the men were referring, to which the males replied, "It don't matter." Witness #1 then entered the residence and closed the door. Witness #1 heard several gunshots and took cover until the shots ceased. Officers note that they observed ballistic damage to the front door and rear living room wall of the residence. Officers also noted ballistic damage to door and fence of Circle of Light Greater

---

[1] The Honorable Catherine D. Perry was the sentencing Judge in plaintiff's criminal case. However, the case was transferred to the Honorable Henry Edward Autrey on April 30, 2018.

Achievers Learning Center. Circle of Light is an operational daycare and school that cares for children during the day. At the time of the incident, several children were outside playing in the playground. Although no children were harmed, the incident caused a substantial risk of serious physical injury and/or death.

The manager of Circle of Light informed officers that the daycare has surveillance cameras pointed towards 8743 Annetta. Officers viewed the footage which shows a black male wearing a red jumpsuit and black hat walk out of the residence with an unknown type of handgun. He then begins firing several shots in the northeast direction. While discharging the firearm, the subject makes several quick movements as if attempting to dodge what officers believe to be shots fired towards the male. After reviewing the footage, the manager of the daycare informed officers that the male in the video is Witness #1's significant other, Cinque Brandon, who frequents the area. Officers spoke with Witness #1 again; at which time she identified the male as Cinque Brandon. Officers also spoke with a Witness #2, who wished to remain anonymous. Witness #2 advised he/she witnessed 3 armed black males and 1 unarmed black female approach the residence yelling when the males began firing weapons towards the residence. The witness retreated when the shots began. Officers recovered several shell casings at the scene and placed a "wanted" out for Cinque Brandon. The wanted was for Assault 1st Degree and Unlawful Possession of a Firearm. A review of Missouri.Case.Net does not reveal any state charges resulting from this incident relative to plaintiff.

St. Louis City Police Officers allege that the incident began when Cinque Brandon traveled to the residence of a person who is caring for plaintiff's daughter. Plaintiff requested the return of his daughter and when the request was unmet, he began threatening harm and left. In response to the threats, the three males and female traveled to plaintiff's residence and began firing.

5

As a result of plaintiff's purported conduct with a firearm on October 14, 2020, a federal warrant for a supervised release violation was issued for the arrest of plaintiff on October 20, 2020. *United States v. Brandon*, 4:15CR255 HEA (E.D.Mo.) [ECF No. 96]. Plaintiff was remanded to custody on October 27, 2020. *Id.* Plaintiff's revocation hearing is currently set for February 28, 2022. *Id.*

On December 10, 2020, plaintiff was indicted in a separate federal court action relating to the same underlying facts of his supervised release revocation. *See United States v. Brandon*, No. 4:20CR773 HEA (E.D.Mo). Plaintiff has been charged with felon in possession of a firearm, possession with intent to distribute methamphetamine, possession with intent to distribute cocaine base (crack), and possession of a firearm in furtherance of a drug trafficking crime.

On November 29, 2021, plaintiff plead guilty to possession with intent to distribute methamphetamine as well as possession with intent to distribute cocaine base(crack). The matter is currently set for sentencing on February 28, 2022. *Id.*

## Discussion

Plaintiff alleges the defendants violated his constitutional rights under 42 U.S.C. § 1983. Naming defendants in their official capacity is the equivalent of naming their employer. To state a claim against St. Louis City, plaintiff must allege that a policy or custom is responsible for violating his constitutional rights. *Monell v. Dep't of Social Services*, 436 U.S. 658, 690-91 (1978).

"Policy" refers to "official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 700 (8th Cir. 2016). *See also Russell v. Hennepin Cty.*, 420 F.3d 841, 847 (8th Cir. 2005) ("A policy is a deliberate choice to follow a course of action made from among various alternatives by the official or officials responsible . . . for establishing final policy

with respect to the subject matter in question"). For a policy that is unconstitutional on its face, a plaintiff needs no other evidence than a statement of the policy and its exercise. *Szabla v. City of Brooklyn, Minn.*, 486 F.3d 385, 389 (8th Cir. 2007). However, when "a policy is constitutional on its face, but it is asserted that a municipality should have done more to prevent constitutional violations by its employees, a plaintiff must establish the existence of a 'policy' by demonstrating that the inadequacies were a product of deliberate or conscious choice by the policymakers." *Id.* at 390.

Alternatively, a plaintiff can establish a claim of liability based on an unconstitutional "custom." In order to do so, the plaintiff must prove:

> 1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
>
> 2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
>
> 3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013). Finally, a plaintiff can show municipal liability by establishing a deliberately indifferent failure to train or supervise. To do so, the plaintiff must demonstrate a "pattern of similar constitutional violations by untrained employees." *S.M. v. Lincoln Cty.*, 874 F.3d 581, 585 (8th Cir. 2017).

Plaintiff's complaint does not provide any factual allegations to support a municipal liability claim against St. Louis City. A policy is a "deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Corwin*, 829 F.3d at 700. Plaintiff points to no facts tending to show that a St. Louis City official made a

deliberate choice to institute an official policy that is either unconstitutional on its face or in its implementation.

Plaintiff also has not provided any factual allegations to support the contention that St. Louis City violated his constitutional rights due to an unofficial custom. In order to demonstrate that a municipality has an unofficial custom, plaintiff must show a widespread pattern of misconduct, that policymaking officials were deliberately indifferent to or tacitly authorized the misconduct, and that the custom was the driving force behind the constitutional violation. *Johnson*, 725 F.3d at 828. Plaintiff does not make any specific allegations of widespread misconduct. To the contrary, plaintiff alleges that his treatment was personal.[2]

Having carefully reviewed and liberally construed the plaintiff's complaint, the Court will dismiss plaintiff's official capacity claims against all defendants under 42 U.S.C. § 1983. To the extent plaintiff has any state law claims, the Court will decline to exercise jurisdiction over such claims. 28 U.S.C. § 1367(c).

Accordingly,

**IT IS HEREBY ORDERED** that this action is **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B).

**IT IS FURTHER ORDERED** that to the extent plaintiff has any state law claims, such claims are subject to dismissal, without prejudice, pursuant to 28 U.S.C. § 1367(c).

---

[2] Even if plaintiff had brought his claims against defendants in their individual capacities, his claims would be subject to dismissal. A prisoner may not recover damages in a § 1983 suit where the judgment would necessarily imply the invalidity of his conviction, continued imprisonment, or sentence unless the conviction or sentence is reversed, expunged, or called into question by issuance of a writ of habeas corpus. *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994); *Schafer v. Moore*, 46 F.3d 43, 45 (8th Cir. 1995); *Edwards v. Balisok*, 520 U.S. 641, 648 (1997) (applying rule in § 1983 suit seeking declaratory relief).

**IT IS FURTHER ORDERED** that an appeal of this dismissal would not be taken in good faith.

A separate Order of Dismissal shall accompany this Memorandum and Order.

Dated this 6th day of December, 2021.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE